ROBERT J. ZANIECKI, Plaintiff-Appellant, v. P. A. BERGNER AND COMPANY OF ILLINOIS, *et al.,* Defendants-Appellees.

Third District   No. 3—85—0696

Opinion filed May 23, 1986.

Donald D. Knuckey, of Henry, and Norman K. Raffety, of Hennepin, for appellant.

· Phillip B. Lenzini, of Kavanagh, Scully, Sudow, White & Frederick, P.C., of Peoria, for appellees.

JUSTICE HEIPLE delivered the opinion of the court:

Plaintiff, Robert Zaniecki, filed a two-count amended complaint against his former employer, P. A. Bergner and Company (Bergners). Plaintiff alleged in count I that he had been wrongfully discharged. Count II was based on an alleged breach of an oral contract to reinstate plaintiff based upon the passing of a polygraph examination. Both counts of the amended complaint were dismissed with prejudice. We affirm in part and reverse in part.

Taking the well-pleaded facts and all reasonable inferences therefrom in count I as true, it appears that plaintiff was employed from June 1982 through December 1982 as a dock supervisor at Bergners' Peru store. During that time, plaintiff would take the scrap wood from shipping containers and leave it for the store's manager or his son to take home. He was allegedly discharged in retaliation for reporting this activity to the store's chief security officer. Plaintiff alleges that this taking of wood constituted a crime.

Count I contained various theories of how plaintiff's discharge violated public policy. On appeal, however, plaintiff urges only that the reporting of suspected criminal activity to one's employer cannot serve as a lawful basis for discharge.

Defendant's motion to dismiss count I offered two basic reasons why plaintiff did not state a cause of action. It was claimed that there was no allegation that the conduct reported was criminal in nature or that plaintiff n good faith suspected that crimes were being committed. Also, it was argued that the firing of an employee for reporting criminal activity to his employer does not constitute retaliatory discharge under the relevant precedents. Because the case law is adequately developed to dispose of this case on the latter grounds, we need not address the interesting and novel theory concerning the via-

bility of a retaliatory discharge claim where the conduct reported is not in fact criminal.

■ Ordinarily, an at-will employee serves at the pleasure of his employer and may be fired for any reason or no reason at all. (*Barr v. Kelso-Burnett Co.* (1985), 106 Ill. 2d 520, 478 N.E.2d 1354.) However, a cause of action for retaliatory discharge is stated when an at-will employee alleges that his discharge was for reasons which violate some clearly mandated public policy. *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 421 N.E.2d 876.

The resolution of this case as we read count I comes down to an interpretation of *Palmateer*. There, plaintiff was discharged allegedly for informing the police of his suspicions that a fellow employee was involved in criminal activity on the job, and for agreeing to testify against him if it came to that. In holding that a cause of action was stated, our supreme court searched for the cutting edge of the term "public policy." Citing *Smith v. Board of Education* (1950), 405 Ill. 143, 89 N.E.2d 893, it stated that "public policy concerns what is right and just and what affects the citizens of the State collectively. It is to be found in the State's constitution and statutes, and, when they are silent, in its judicial decisions." *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 130, 421 N.E.2d 876.

As the remainder of the paragraph evidences, the court felt uncomfortable resting on the *Smith* formulation of public policy. Hence, the court set the parameters as follows:

> "Although there is no precise line of demarcation dividing matters that are the subject of public policies from matters purely personal, *** a matter must strike at the heart of a citizen's social rights, duties and responsibilities before the tort will be allowed." *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 130, 421 N.E.2d 876.

In arriving at the conclusion that it violated public policy to discharge Palmateer for blowing the whistle on a co-worker, the court relied on multifarious sources. For example, it cited *Joiner v. Benton Community Bank* (1980), 82 Ill. 2d 40, 41 N.E.2d 229, a malicious prosecution action, for the proposition that public policy favors the exposure of crime and that the cooperation of private citizens is essential to effective law enforcement. Section 31—8 of the Criminal Code of 1961 was referred to. That statute requires that a citizen provide assistance to the police when so requested.

We view *Palmateer*, a 4-3 decision, as the outer limits of protection for at-will employees discharged in retaliation for the taking of some action favored by public policy. What can be extracted from *Pal-

*mateer* is the court's concern that employees have an unfettered right to turn to public officials without fear of loss of livelihood. The fact that information is given to a public official is not trivial; these are people charged by the citizenry to ensure their welfare and to promote the common good. A private employer burdens the communication and cooperation necessary to attain these public goals by discharging an employee in retaliation for such cooperation. When this happens, clear public policy concerns are implicated.

No such public policy is immediately evident in the relationship between an employee and his superiors. It may very well be that there are powerful reasons for extending protection to the employee who goes through internal channels in reporting suspected criminal activity. However, the statutes and cases cited as sources of public policy in *Palmateer* are not applicable to an internal employment dispute. Consequently, we decline to extend *Palmateer* to the instant set of facts.

█ In so holding, we also acknowledge that our decision is in direct conflict with the First District's holding in *Petrik v. Monarch Printing Corp.* (1982), 111 Ill. App. 3d 502, 444 N.E.2d 588. However, our supreme court has shown little willingness to find violations of public policy where the discharge arises out of a purely private relationship (*Price v. Carmack Datsun, Inc.* (1985), 109 Ill. 2d 65, 485 N.E.2d 369), or no infringement upon any constitutional or statutory policy can be shown (*Barr v. Kelso-Burnett Co.* (1985), 106 Ill. 2d 520, 476 N.E.2d 1354). In light of that posture, we find *Petrik* to be an unwarranted extension of *Palmateer* insofar as the critical element of public authority involvement is lacking and there is no State or Federal statute, constitution, or case law which would arguably protect plaintiff's activities. (*Cf. Wheeler v. Caterpillar Tractor Co.* (1985), 108 Ill. 2d 502, 485 N.E.2d 372.) Accordingly, we affirm the dismissal of count I as amended.

█ Count II, although inartfully drafted, does state a cause of action for breach of an oral contract. Taking the well-pleaded facts as true, plaintiff was suspended from employment on December 13, 1982. Bergners agreed to rehire him at his previous employment status and wage rate if a polygraph examination revealed that his denial of stealing scrap wood was truthful. He took the polygraph examination some nine months later and passed. Bergners refused to rehire him and officially terminated him on July 7, 1984. (We note the inconsistency between the allegation of a December 13, 1982, suspension and subsequent termination in count II and the allegation of discharge on December 14, 1982, in count I. This is a classic example of the

type of pleading which was approved in *McCormick v. Kopmann* (1959), 23 Ill. App. 2d 189, 161 N.E.2d 720.

■ For a claim to be stated for a valid oral contract, the pleader must allege sufficient facts to indicate offer, acceptance and consideration. *Bray v. Illinois National Bank* (1976), 37 Ill. App. 3d 286, 345 N.E.2d 503.

Bergners asserts numerous grounds in support of the trial court's conclusion that count II does not state a cause of action. There is no allegation concerning agency; that is, it is the corporation which is said to have made the offer and to have breached the contract, but the name of no agent acting for the corporation is set forth. There is said to be no valid consideration. It is urged that the allegation of offer lacks definiteness in that no time in which the offer could be accepted is stated. Thus, it is argued, the offer expired within a reasonable time and nine months is unreasonable under the circumstances. Finally, the alleged contract would restore defendant only to at-will status, which would make him terminable for any reason or no reason at all, absent a clearly mandated public policy.

■ A complaint should be dismissed with prejudice only when it appears that there is no set of facts which, if proved, would entitle plaintiff to relief. (*Powell v. Village of Mt. Zion* (1980), 88 Ill. App. 3d 406, 410 N.E.2d 525.) The absence of an allegation of agency is not fatal to the instant complaint under this standard. A subsequent amendment naming the agent would cure this defect.

■ The other claims go to the substance of the alleged contract. There is certainly consideration here. Among other things, consideration is present "if the promisee, in return for the promise, does anything legal which he is not bound to do." (17 C.J.S. *Contracts* sec. 74 (1963).) Plaintiff took the polygraph, although he certainly was not bound to do so, in return for the promise of reinstatement. Hence, the traditional test for consideration is met.

■ Concerning the supposed lapse of the offer by operation of time, Bergners' statement of the law is correct. If an offer states no definite time for acceptance, it lapses if not accepted within a reasonable time. (*Johnson v. Whitney Metal Tool Co.* (1950), 342 Ill. App. 258, 96 N.E.2d 372.) Here, Bergners bargained for a specific action and result on plaintiff's part. Whether plaintiff performed within a reasonable time depends upon a multiplicity of circumstances. Consequently, we cannot say as a matter of law that nine months was an unreasonable amount of time for plaintiff to perform. That question should be resolved by the trier of fact. *Textron, Inc. v. Froelich* (1973), 223 Pa. Super. 506, 302 A.2d 426.

■ Lastly, the issue of plaintiff's tenure upon return poses an interesting, but immaterial question. If plaintiff's version of the contract regarding his return to previous employment status is correct, it would seem that there is no obstacle to Bergners' terminating him immediately and frustrating any claim for reinstatement. However, plaintiff has alleged that his termination was on July 7, 1984. Since we must accept this as true, there is a mature claim for damages from the date he took and passed the polygraph to the date of his alleged termination.

In summary, we find that count II states a good cause of action in substance if not in form. On remand, plaintiff shall have leave to replead count II, but the dismissal of count I with prejudice is affirmed.

Affirmed in part and reversed in part and remanded.

SCOTT, P.J., and STOUDER, J., concur.