**Edward M. PARR, Plaintiff,**

v.

**TRIPLETT CORPORATION, Defendant.**

No. 88 C 7917.

United States District Court,
N.D. Illinois, E.D.

Sept. 27, 1989.

Steven J. Rosenberg, Chicago, Ill., for plaintiff.

Jeffrey S. Goldman, Fox & Grove, Chicago, Ill., Collette M. Foissotte, David A. Schaefer, Maynard & Buck, Cleveland, Ohio, for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Edward M. Parr brings this diversity action against his former employer defendant Triplett Corporation. Parr seeks recovery for the tort of retaliatory discharge. Each party has filed a motion for summary judgment. For the reasons stated herein, we deny both of these motions.

### Background

Edward Parr was first employed by Triplett in December 1985 as an operations manager at Alltest, a division of Triplett. He was promoted to Vice President of Sales in October 1986. Parr was an employee "at-will"; his employment was pursuant to an oral contract with no stated duration.

Parr's supervisor at Alltest was Jack Paul. According to Parr, Paul engaged in various activities designed to defraud Alltest. In their respective motions, the parties focus on one scheme in particular. Paul, along with an Alltest salesman and distributor, allegedly created a company known as Automotive Equipment Services ("AES"). Paul would allegedly divert orders intended for Alltest to AES. In this manner, Paul obtained sale profits that rightfully belonged to Alltest. Parr argues that this scheme "crossed the line into overt criminal activity, namely conspiracy, theft, mail and wire fraud."

Paul allegedly described the scheme to Parr and asked him to participate. Parr refused to take part in the AES distributorship. Instead, Parr decided to inform Triplett management officials of the AES scheme, as well as Paul's other "dubious" activities.

As a result of Parr's report, Triplett investigated Paul's alleged criminal activities. Triplett states that it found no significant improprieties and decided to take no action against Paul. However, subsequent to making his report, Parr was discharged by Triplett.

Parr maintains that he was discharged because he refused to participate in the criminal scheme and reported Paul's activities to management. Triplett claims that Parr's termination was unrelated to his report or relationship with Paul. Triplett explains that Parr was discharged because upper management was overstaffed and because Parr had failed to generate increased sales activity.

### Standard of Review

"A motion for summary judgment should be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Checkers, Simon & Rosner v. Lurie Corp.,* 864 F.2d 1338 (7th Cir.1989) (citation omitted). The moving party bears the burden of establishing the absence of any disputed facts. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If, however, the nonmoving party bears the burden of proving an issue at trial, it also bears the burden of presenting sufficient facts on summary judgment from which a trier of fact could find in its favor, and the moving party need only "[point] out to the District Court ... that there is an absence of evidence to support the nonmoving party's case." *Id.* 106 S.Ct. at 2554; *Beard v. Whitley County REMC,*

840 F.2d 405, 410 (7th Cir.1988). In deciding a motion for summary judgment, the court must read all facts in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Richardson v. Penfold*, 839 F.2d 392, 394 (7th Cir.1988).

### Discussion

There are three elements of a cause of action for retaliatory discharge under Illinois law.[1] First, an employee must establish that she has been discharged. Second, the employee must prove that the discharge was in retaliation for her activities. Finally, a plaintiff must show that the discharge violates a clear mandate of public policy. *Hinthorn v. Roland's of Bloomington*, 119 Ill.2d 526, 116 Ill.Dec. 694, 696, 519 N.E.2d 909, 911 (1988); *Palmateer v. International Harvester Co.*, 85 Ill.2d 124, 52 Ill.Dec. 13, 15, 421 N.E.2d 876, 878 (1981).

Triplett argues that Parr has not established that his discharge violates a clear mandate of public policy, even if Parr's allegations are accepted as true for the purposes of Triplett's motion. When Parr learned of the allegedly criminal scheme, he reported the wrongdoing solely to Triplett officials. Triplett states that, under Illinois law, public policy would only be implicated if Parr was discharged after reporting the wrongdoing to law enforcement officials. According to Triplett, a discharge following a report to company officials should not be actionable because it is a matter of purely personal concern.

Parr claims that Triplett has incorrectly interpreted Illinois law. Parr takes the position that a report of criminal activity is protected by public policy, regardless of whether the employee reports a crime to his company superiors or law enforcement officials. Thus, Parr asserts that we should enter judgment in his favor.

In *Palmateer v. International Harvester*, 52 Ill.Dec. at 13, 421 N.E.2d at 876, the Illinois Supreme Court discussed the boundaries of the retaliatory discharge

tort. In this case, the plaintiff was fired for supplying information to law enforcement officials and cooperating with an investigation of the criminal activities of a fellow International Harvester employee. Palmateer's retaliatory discharge claim was dismissed by the lower court, which held that he had failed to state a cause of action. The Supreme Court reversed, holding that Palmateer could maintain an action for retaliatory discharge.

The Court explained that the protection of public policy was the foundation of the tort of retaliatory discharge; "the cause of action is allowed where the public policy is clear, but is denied where it is equally clear that only private interests are at stake." *Id.* 52 Ill.Dec. at 16, 421 N.E.2d at 879. The Court described the considerations inherent in the determination of whether a given matter implicated public policy:

> In general, it can be said that public policy concerns what is right and just and what affects the citizens of the State collectively. It is to be found in the State's constitution and statutes and, when they are silent, in its judicial decisions. Although there is no precise line of demarcation dividing matters that are the subject of public policies from matters purely personal ... a matter must strike at the heart of a citizen's social rights, duties, and responsibilities before the tort will be allowed.

*Id.* 52 Ill.Dec. at 17–18, 421 N.E.2d at 880–881. The Court ultimately concluded that Palmateer's discharge violated the clearly mandated public policy of encouraging enforcement of the Illinois Criminal Code: "[t]here is no public policy more basic, nothing more implicit in the concept of ordered liberty, than the enforcement of a State's criminal code." *Id.* 52 Ill.Dec. at 16, 421 N.E.2d at 879 (citations omitted).

Triplett maintains that the current action does not fit within the parameters of *Palmateer*. Triplett argues that the current situation is one of merely private concern and does not implicate a clearly mandated public policy. According to Triplett, because the allegations of impropriety were

---

1. The parties agree that Illinois law applies in this diversity action.

reported only through internal channels, Triplett is the only concerned entity. The discharge is a personal dispute that does not affect the citizens of Illinois collectively, as required by *Palmateer.*

Triplett cites *Zaniecki v. P.A. Bergner & Co. of Ill.,* 143 Ill.App.3d 668, 97 Ill.Dec. 756, 493 N.E.2d 419 (3d Dist.1986), in support of this position.[2] In *Zaniecki,* the court declined to extend the rationale of *Palmateer* to a situation in which an employee was discharged after reporting criminal activity to his employer. *Id.* 97 Ill.Dec. at 788, 493 N.E.2d at 451. The Court held that the public policy concerns that preclude an employer from firing an individual who cooperates with law enforcement agencies do not attach when the employee merely reports crimes to his superiors. *Id.*

Although *Zaniecki* supports Triplett's position, other Illinois courts have reached the opposite conclusion. In *Petrik v. Monarch Printing Corp.,* 111 Ill.App.3d 502, 67 Ill.Dec. 352, 444 N.E.2d 588 (1st Dist.1982), the plaintiff was discharged after reporting his suspicion that a fellow employee was embezzling funds. The Court held that the plaintiff's conduct involved "something more than an ordinary dispute between an employee and his employer." *Id.* 67 Ill. Dec. at 356, 444 N.E.2d at 592. The court concluded that, "it is equally apparent that the public policy considerations that underlie *Palmateer* also support Petrik's conduct." *Id.*

Similarly, in *Johnson v. World Color Press, Inc.,* 147 Ill.App.3d 746, 101 Ill.Dec. 251, 498 N.E.2d 575 (5th Dist.1986), the Court was willing to extend *Palmateer* beyond its specific facts. The plaintiff Johnson had objected to his superiors that certain accounting practices violated federal securities laws. Johnson maintained that his subsequent discharge was a response to these protests. The Court refused to accept the employer's claim that public policy was not implicated by an internal complaint: "[i]t does not matter that the plaintiff in the present case alleged that he only

complained to his superiors and not to law enforcement officials." *Id.* 101 Ill.Dec. at 254–55, 498 N.E.2d at 578–579. *See also Abrams v. Echlin Corp.,* 174 Ill.App.3d 434, 123 Ill.Dec. 884, 888, 528 N.E.2d 429, 433 (1st Dist.1988); *Shores v. Senior Manor Nursing Home,* 164 Ill.App.3d 503, 115 Ill.Dec. 946, 950, 518 N.E.2d 471, 475 (5th Dist.1988).

The Illinois Supreme Court has not decided whether the tort of retaliatory discharge is available to an individual who is discharged for reporting criminal activity to company officials. Our task as a federal court sitting in diversity is to predict how the Illinois Supreme Court would resolve the issue. *Green v. J.C. Penney Auto Ins. Co., Inc.,* 806 F.2d 759, 761 (7th Cir.1986). We conclude that a clear mandate of public policy is violated when an employee is discharged for reporting criminal activity to his employer.

Allowing an employee to maintain an action for retaliatory discharge would further the policy concerns identified in *Palmateer.* In *Palmateer,* the Court held that a violation of the policy favoring enforcement of the Illinois Criminal Code was sufficient to support a claim of retaliatory discharge. *Palmateer,* 52 Ill.Dec. at 16, 17, 421 N.E.2d at 879, 880. The Court stated that, "[p]ublic policy favors the exposure of crime, and the cooperation of citizens possessing knowledge thereof is essential to effective implementation of that policy." *Id.* 52 Ill. Dec. at 16, 421 N.E.2d at 880.

■ When an employee reports criminal activity to his employer, he helps to expose crime and facilitates the enforcement of the Illinois Criminal Code. Therefore, an important public policy is hampered if he is discharged as a result. A report to an employer does not transform a violation of the Illinois Criminal Code from a matter of public concern into a private dispute. The employee who chooses to approach his employer should not be denied a remedy simply because a direct report to law enforcement agencies might effectuate the expo-

**2.** Triplett also cites *Pratt v. Caterpillar Tractor Co.,* 149 Ill.App.3d 588, 102 Ill.Dec. 900, 500 N.E.2d 1001 (1986). However, this case does not support Triplett's position. The case merely holds that certain federal law does not embody Illinois public policy.

sure of crime more quickly. This would be a nonsensical distinction.

The Illinois Supreme Court's decision in *Wheeler v. Caterpillar Tractor Co.,* 108 Ill.2d 502, 92 Ill.Dec. 561, 485 N.E.2d 372 (1985), *cert. denied,* 475 U.S. 1122, 106 S.Ct. 1641, 90 L.Ed.2d 187 supports our conclusion. Plaintiff Wheeler informed his employer that its control of radioactive materials might be in violation of federal laws governing the treatment of these materials. Wheeler was subsequently discharged.

The Illinois Supreme Court reversed the Appellate Court, which held that Wheeler could not maintain a retaliatory discharge action because he had not complained to the Nuclear Regulatory Commission. The Court stated:

> We do not agree with the appellate court that the question whether the facts as alleged involved public policy, or a matter of private concern, depended on whether a complaint was made to the regulatory authorities. The legislation and the regulations declared the public policy, and the existence of that policy did not depend on whether plaintiff had communicated a complaint to the Nuclear Regulatory Commission or whether its investigation preceded or followed that complaint.

*Id.* 92 Ill.Dec. at 565, 485 N.E.2d at 376.

The logic of *Wheeler* is applicable to the present case. The impact of the discharge on public policy does not depend on whether Parr's initial complaint was made to Triplett management or law enforcement officials. Therefore, we reject Triplett's contention that Parr has not stated a cause of action for retaliatory discharge. Accordingly, Triplett's motion for summary judgment is denied.

Parr's motion for summary judgment must also be rejected. For the purpose of deciding Parr's motion, we must view the facts in the light most favorable to Triplett. From this perspective, it is clear that there are substantial issues of fact that preclude summary judgment. Most notably, a substantial issue of fact remains as to whether Parr was discharged in retaliation for his report. While Parr contends that Paul fired him after his report to company management, Triplett asserts that Paul was not involved in the decision to terminate Parr's employment. Triplett asserts that this decision was made by Thomas Milner. Milner claims that he discharged Parr because of overstaffing, as well as Parr's inadequate performance. We cannot resolve this bona fide factual dispute on a motion for summary judgment. *Checkers, Simon & Rosner v. Lurie Corp.,* 864 F.2d at 1344.

### Conclusion

For the reasons stated above, the cross-motions for summary judgment are denied. It is so ordered.