**DRIVEAWAY AND TRUCKAWAY SERVICE, INC., an Illinois corporation, and James P. Burke, Jr., Plaintiffs,**

v.

**AARON DRIVEAWAY & TRUCKAWAY COMPANY, INC., a New York corporation, and Aanthony's Driveaway Truckaway Co., Inc., a New Jersey corporation, Defendants.**

No. 91 C 1603.

United States District Court, N.D. Illinois, E.D.

Dec. 5, 1991.

Donald S. Rothschild, Mark C. Gross, Donald S. Rothschild & Associates, Ltd., Oak Park, Ill., for plaintiffs.

Michael H. King, Donald Christopher Pasulka, Ross & Hardies, P.C., Chicago, Ill., for defendants.

## MEMORANDUM OPINION

KOCORAS, District Judge.

This matter is before the Court on a motion by defendants, Aaron Driveaway &

Truckaway Co. and Aanthony's Driveaway Truckaway Co. ("Truckaway"). Truckaway's motion is entitled a "Motion to Strike Plaintiffs' Prayer For Punitive Damages" and is purportedly pursuant to Federal Rule of Civil Procedure 12(f). For the reasons set forth below, Truckaway's motion is granted.

## BACKGROUND

Truckaway is a New York corporation engaged in the business of transporting vehicles throughout the United States. It also retains agency relationships in a number of states for the purpose of conducting automotive transport services on its behalf. Plaintiff–Truckaway Service, Inc., on the other hand, is an Illinois corporation. Jurisdiction is based on diversity.

The plaintiffs, James P. Burke and Driveaway and Truckaway Service, Inc. ("Plaintiffs"), brought a two count complaint against Truckaway. Plaintiffs' complaint alleges that on approximately July 1, 1990 the Plaintiffs entered into an oral agency agreement with Truckaway for the purpose of operating an exclusive Chicago–Area Aaron Driveaway Service agency. The complaint further alleges that in reliance upon this agreement, Plaintiffs formed an Illinois corporation called Driveaway, Inc. in mid-July of 1991. Also in reliance upon the agreement, Plaintiffs procured capitalization, entered into a lease agreement, and made improvements upon the leasehold. Still other expenses included purchasing liability and worker's compensation insurance, employing and compensating persons to transport automobiles, and providing wages and insurance for drivers.

Only Count II of the complaint, which is styled "Breach of Agency Agreement— Termination," is relevant for purposes of Truckaway's motion. It alleges that Truckaway terminated the oral agreement "in violation of the parties' agreement that the agency relationship would remain in full force and effect so long as Plaintiffs complied with lawful company procedures and fulfilled its obligations." Count II further alleges that Truckaway terminated the agreement because Plaintiffs refused to participate in a number of illegal schemes and that such termination was wrongful, malicious, and without justification. These alleged illegal schemes included violations of both the Illinois Commerce Commission regulations and Interstate Commerce Commission requirements, in addition to an illegal checking scheme that purportedly violated both state and federal tax laws. As relief for Truckaway's alleged breach and retaliatory discharge, Plaintiffs seek $275,000 in compensatory and $250,000 in punitive damages.

Truckaway's motion seeks to strike Plaintiffs' prayer for punitive damages pursuant to Federal Rule of Civil Procedure 12(f). Truckaway argues that Plaintiffs' Count II fails to plead an independent tort. More specifically, Truckaway argues that Plaintiffs cannot properly plead an action for retaliatory discharge since Plaintiffs were never Truckaway employees. Accordingly, Truckaway seeks to strike Plaintiffs' prayer for punitive damages.

## DISCUSSION

Truckaway's motion presents two issues. The first issue is whether Plaintiffs have properly pleaded an employment relationship with Truckaway such that they can seek punitive damages pursuant to a retaliatory discharge claim against Truckaway under established precedent. If Plaintiffs have not established that they were employees of Truckaway, we must decide whether the tort of retaliatory discharge should extend to agents whose services are wrongfully terminated by their principals. As a threshold matter, however, we must address the proper nature of Truckaway's motion.

### A. *Truckaway's Motion*

Truckaway has incorrectly styled its motion as a motion to strike pursuant to Rule 12(f). Rule 12(f) provides that a "court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). Plaintiffs' prayer for punitive damages is neither a defense,

redundant, immaterial, impertinent, nor scandalous. Accordingly, Rule 12(f) is inapplicable. Instead of relying on Rule 12(f), Truckaway should have filed their motion pursuant to Rule 12(b)(6) as a motion to dismiss. *See Peterson v. Baloun,* 715 F.Supp. 212, 213–14 (N.D.Ill.1989); *Professional Asset Mgt., Inc. v. Penn Square Bank,* 566 F.Supp. 134, 136 (W.D.Okla.1983). In accordance with this precedent, we view Truckaway's motion as a motion to dismiss.

In filing a 12(b)(6) motion, Truckaway must satisfy a high standard. The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits of the case. Under the "simplified notice pleading" of the Federal Rules of Civil Procedure, the complaint's allegations should be construed liberally, and "the complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–34, 81 L.Ed.2d 59 (1984).

When considering a defendant's motion to dismiss the Court must view the complaint's allegations in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Conley,* 355 U.S. at 45, 78 S.Ct. at 101–02. All well-pleaded facts and allegations in the plaintiff's complaint must be taken as true, *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.,* 805 F.2d 732, 733 (7th Cir.1986), *cert. denied,* 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987), and the plaintiff is entitled to all reasonable inferences that can be drawn therefrom. *Ellsworth v. Racine,* 774 F.2d 182, 184 (7th Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). We address Truckaway's motion with this standard in mind.

**B.** *Retaliatory Discharge Under Established Precedent*

■ Truckaway's argument for dismissing Plaintiffs' prayer for punitive damages is that Plaintiffs have merely pleaded a breach of contract claim and have failed to properly establish a viable claim for retaliatory discharge. In so arguing, Truckaway contends that an employer-employee relationship is an essential element of a retaliatory discharge action. Truckaway further asserts that Plaintiffs were never its employees. Accordingly, Truckaway argues that Plaintiffs are not entitled to seek punitive damages through a retaliatory discharge claim. We agree that under existing precedent, Plaintiffs' complaint fails to establish a claim for retaliatory discharge.

■ A plaintiff who seeks to file a retaliatory discharge action must satisfy a number of elements. He must establish: (1) that he was an employee; (2) that he was dismissed; (3) that the dismissal was in retaliation for his activities; and (4) that the dismissal was in contravention of a clearly mandated public policy. *Fellhauer v. Geneva,* 142 Ill.2d 495, 154 Ill.Dec. 649, 654, 568 N.E.2d 870, 875 (1991); *Wheeler v. Caterpillar Tractor Co.,* 108 Ill.2d 502, 92 Ill.Dec. 561, 563, 485 N.E.2d 372, 374 (1985), *cert. denied,* 475 U.S. 1122, 106 S.Ct. 1641, 90 L.Ed.2d 187 (1986); *New Horizons Elecs. v. Clarion Corp.,* 203 Ill. App.3d 332, 149 Ill.Dec. 5, 7, 561 N.E.2d 283, 285 (Ill.App.Ct. 2nd Dist.1990), *appeal denied,* 136 Ill.2d 546, 153 Ill.Dec. 376, 567 N.E.2d 334 (1991). Of critical importance here is whether Plaintiffs were Truckaway employees.

Plaintiffs claim that their employment relationship with Truckaway was virtually identical to that of being employees of Truckaway. While Plaintiffs admit that they were agents of Truckaway, they contend that their principal-agent relationship was "completely analogous" to an employer-employee relationship. In support, Plaintiffs argue that "like employees, [they] were under the exclusive direction and control of [Truckaway] and relied upon [Truckaway] entirely for payment for services rendered by them on behalf of [Truckaway]." Accordingly, Plaintiffs insist that they are entitled to punitive damages as employees would be.

We disagree that Plaintiffs' employment relationship was "completely analogous" to being a Truckaway employee. Plaintiffs did not receive an hourly wage or salary but rather received fees from Truckaway according to a schedule that was negotiated and agreed upon between the parties. Moreover, Plaintiff–James Burke formed a separate corporate entity in furtherance of the oral agency agreement. This corporation was a separate and distinct business. Additionally, Plaintiffs obtained their own worker's compensation insurance as well as general liability insurance. They hired their own employees and provided them with insurance for their automobile trips. This fact illustrates Plaintiffs' own belief that they, not Truckaway, would be liable for their employees' tortious acts. Furthermore, nowhere in the complaint do the Plaintiffs use the terms "employer" or "employee." Therefore, we reject Plaintiffs' contention that their principal-agent relationship was substantially identical to an employer-employee relationship. Accordingly, we hold that Plaintiffs can neither maintain an action for retaliatory discharge nor receive punitive damages against Truckaway under existing precedent.

## C. Availability of Retaliatory Discharge Claim to Agents

■ Our conclusion that Plaintiffs were not Truckaway employees, however, does not end our inquiry. Plaintiffs contend that their prayer for punitive damages is proper because "there is no reason" to limit to traditional employment relationships the prohibition against retaliatory discharge. The Illinois Supreme Court has not decided whether the tort of retaliatory discharge, and consequently the availability of punitive damages, should extend to agents. Accordingly, our task as a federal court sitting in diversity is to predict how the Illinois Supreme Court would resolve this issue. *Parr v. Triplett Corp.*, 727 F.Supp. 1163, 1166 (N.D.Ill.1989). While Illinois appellate court decisions are not controlling *per se*, *Williams v. Lane*, 826 F.2d 654, 661–62 (7th Cir.1987); *Green v. Penney Auto Insur. Co.*, 806 F.2d 759, 761 (7th

Cir.1986), they must be followed if they represent a sound prediction of how the Illinois Supreme Court would decide the issue. *See Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967); *McCoy v. Richards*, 771 F.2d 1108, 1110 (7th Cir. 1985).

■ Nothing in existing case law supports extending the tort of retaliatory discharge. We have found no Illinois opinion or any other state or federal decision that has extended the tort of retaliatory discharge to a principal-agent relationship. Additionally, the few courts that have addressed the issue of extending the tort of retaliatory discharge to non-employees, generally, have refused to do so. In *New Horizons Elecs. v. Clarion Corp.*, for instance, the Illinois appellate court refused to extend the availability of the tort to independent contractors. *New Horizons*, 149 Ill.Dec. at 7, 561 N.E.2d at 285. In so doing, the *New Horizons* court expressly rejected the opportunity to expand the tort beyond the traditional employer-employee setting. *Id.* Indiana courts have similarly refused to extend the tort of retaliatory discharge to non-employees. *See Wilmington v. Harvest Insur. Co.*, 521 N.E.2d 953, 956 (Ind.Ct.App.1988) (dicta); *Morgan Drive Away, Inc. v. Brant*, 479 N.E.2d 1336, 1338 (Ind.Ct.App.1985), *rev'd on other grounds* 489 N.E.2d 933, 934 (Ind.1986); *cf. Bonfield v. AAMCO Transmissions*, 708 F.Supp. 867, 888 (N.D.Ill.1989) (refusing to extend tort of retaliatory discharge to a franchisee in the face of no Illinois authority).

These holdings are consistent with the articulated aversion expressed by the courts toward expanding the tort's scope. The Illinois Supreme Court, itself, has voiced its concern over the tort's breadth. *See Fellhauer*, 154 Ill.Dec. at 654, 568 N.E.2d at 875 (recognizing the tort to be a "limited and narrow cause of action"); *Barr v. Kelso–Burnett Co.*, 106 Ill.2d 520, 88 Ill.Dec. 628, 630, 478 N.E.2d 1354, 1356 (1985) (stating that "[c]ontrary to plaintiffs' assertion ... this court has not ... 'rejected a narrow interpretation of the re-

taliatory discharge tort' and does not 'strongly support'" its expansion).

Finally, we note that our interpretation of the relevant Illinois Supreme Court decisions supports the conclusion that it would not expand the tort's scope to reach principal-agent relationships. Illinois first recognized the tort of retaliatory discharge in *Kelsay v. Motorola*, 74 Ill.2d 172, 23 Ill. Dec. 559, 384 N.E.2d 353 (1978). The *Kelsay* court deemed the tort necessary to provide an employee, who had virtually no bargaining power, with a remedy against his employer who had discharged him in contravention to the state's strong public policy. *Kelsay*, 23 Ill.Dec. at 563, 384 N.E.2d at 357 (acknowledging that without this cause of action employees would face the "dilemma" of succumbing to an employer's threats or being discharged with no legal recourse); *see also Wheeler*, 92 Ill.Dec. at 568, 485 N.E.2d at 379 (Moran, J., dissenting) (concluding that the impetus for the recognition of the tort "was the *lack of any remedy* available to employees in situations where they were discharged" in violation of a clearly mandated public policy) (emphasis added). The *Kelsay* court, however, did not merely wish to establish *any* remedy. Rather, it desired an effective remedy. The tort of retaliatory discharge fulfilled this goal by providing employees with the opportunity to recover punitive damages. *Kelsay*, 23 Ill.Dec. at 565, 384 N.E.2d at 359.

The court's desire for an effective remedy, as opposed to merely any remedy, lead to its decision in *Midgett v. Sackett–Chicago, Inc.*, 105 Ill.2d 143, 85 Ill.Dec. 475, 473 N.E.2d 1280 (1984), *cert. denied*, 474 U.S. 909, 106 S.Ct. 278, 88 L.Ed.2d 243 (1985). In *Midgett*, the court extended the tort of retaliatory discharge beyond at-will employees. *Midgett*, 85 Ill.Dec. at 478–79, 473 N.E.2d at 1283–84. The employees in *Midgett* were union employees who retained a contractual remedy under their collective bargaining agreement for being discharged without just cause. *Id.* The court's primary reason for extending the tort was that it deemed the contractual remedy "incomplete." *Id.* The court found the contractual remedy incomplete, in part, be-

cause it believed back pay and reinstatement to be an ineffective deterrent against an employer who violated an important public policy of the State. *Id.* 85 Ill.Dec. at 479, 473 N.E.2d at 1284. Additionally, the court was aware that the availability of relief under a collective bargaining agreement could be suspect due to a "union's reluctance to arbitrate, or ... obstacles posed by federal preemption." *Lamb v. Briggs Mfg.*, 700 F.2d 1092, 1096 (7th Cir. 1983). Therefore, due to these inadequacies with the contractual remedy, the court found it appropriate to extend the tort of retaliatory discharge beyond at-will employees.

The two underlying concerns articulated in these above-mentioned cases are not present here. We conclude that Plaintiffs, as agents, have a legal remedy available to them and that this remedy is effective. First, Plaintiffs have a remedy in the form of a breach of contract claim. Indeed, Plaintiffs' complaint alleges that Truckaway's termination was "in violation of the parties' agreement that the agency relationship would remain in full force and effect so long as Plaintiffs complied with lawful company procedures and fulfilled its obligations." Importantly, we note that the *availability* of a contractual remedy rather than the existence of one in fact is all that is required to find that a sufficient legal remedy exists here. There is no hint of unequal bargaining power between Plaintiffs and Truckaway. Indeed, Plaintiff–James Burke was a sophisticated individual who, among other things, established his own corporation, purchased insurance, hired employees, and bargained over fee schedules. This clearly was not a situation where the two parties did "not stand on equal footing" as in an employment at-will scenario. *See Palmateer v. International Harvester Co.*, 85 Ill.2d 124, 52 Ill.Dec. 13, 15, 421 N.E.2d 876, 878 (1981). Thus, we conclude that Plaintiffs have an available legal remedy within the meaning of *Kelsay, Palmateer,* and *Midgett* whether or not they make good on their breach of contract claim.

Second, we also find Plaintiffs' breach of contract remedy to be an effective one. Agents who are wrongfully discharged by their principals will routinely seek compensatory damages well above those found in employer-employee discharge cases. Plaintiffs are no exception. They have pleaded compensatory damages of $275,000. This is far above the cost an employer would incur for back pay and reinstatement and provides a sufficient deterrent against potential indiscretions by a principal. Accordingly, the concern expressed by the *Midgett* court over the effectiveness of a contractual claim is not applicable. Moreover, unlike the *Midgett* employees, Plaintiffs' cause of action is not dependent upon a union's decision to pursue the claim. Accordingly, the potential damage award sought by Plaintiffs is effective within the meaning of *Kelsay, Palmateer,* and *Midgett.* We, therefore, conclude that neither the tort of retaliatory discharge nor punitive damages are available to Plaintiffs.

We reject Plaintiffs' argument that the tort of retaliatory discharge should be extended because to do so would further the Illinois Supreme Court's interest in protecting Illinois' important public policy. While the court has expressed its interest in protecting the State's public policy in its line of retaliatory discharge cases, to contend that this interest by itself justifies extending the tort represents a misunderstanding of the case law. In these cases, the Supreme Court has established a delicate formula in an attempt to strike the "proper balance" among employers', employees', *and* the public's interests. *Palmateer,* 52 Ill.Dec. at 15, 421 N.E.2d at 878. Furthermore, as we noted above, existing legal remedies sufficiently protect the public in principal-agent discharge cases. As such, we reject Truckaway's argument.

In sum, we hold that the Illinois Supreme Court would not permit agents to pursue a claim for retaliatory discharge against their principals. We find support for such a conclusion in existing case law, the general aversion articulated by Illinois courts toward expanding the tort's scope, and our interpretation of the underlying concerns of the Illinois Supreme Court in initially recognizing this tort. We, therefore, find it appropriate to dismiss Plaintiffs' prayer for punitive damages.

## CONCLUSION

For the foregoing reasons, Truckaway's motion to dismiss Plaintiffs' prayer for punitive damages is granted.