(840 P.2d 534)

No. 66,718

EVERETT MARINHAGEN and SHIRLEY MARINHAGEN, *Appellants*, v. BOSTER, INC., CHARLES D. BOSTER, and NITA BOSTER, *Appellees*.

Opinion filed October 30, 1992.

*David O. Alegria*, of McCullough, Wareheim & LaBunker, P.A., of Topeka, for appellants.

*Justice B. King*, of Fisher, Patterson, Sayler & Smith, of Topeka, for appellees.

Before REES, P.J., BRAZIL, J., and JOHN J. BUKATY, JR., District Judge, assigned.

BUKATY, J.: Plaintiffs Everett Marinhagen and Shirley Marinhagen appeal from the summary judgment entered against them and in favor of defendants Boster, Inc., Charles D. Boster, and Nita Boster.

We first consider the issue of whether plaintiffs filed the appeal out of time, thus depriving us of jurisdiction.

On March 12, 1991, the summary judgment order from which this appeal is taken was entered and served on counsel by mail in compliance with K.S.A. 60-258 and Rule 134 (1991 Kan. Ct. R. Annot. 112). The Marinhagens' notice of appeal was filed more than 30 calendar days thereafter, on May 30, 1991.

Although K.S.A. 1991 Supp. 60-2103(a) provides that the time within which an appeal may be taken shall be 30 days from the entry of judgment, it also provides that the running of the time for appeal is terminated by a timely K.S.A. 60-259(f) motion to alter or amend the judgment and that where the post-judgment motion to alter or amend has been timely filed, the time for appeal commences to run and is to be computed from the entry of the order granting or denying the motion to alter or amend.

On March 27, 1991, following the entry and service of the summary judgment order on March 12, the Marinhagens mailed to defense counsel a motion for reconsideration (motion to alter or amend). The motion was filed the next day, March 28. It was denied May 6.

Even though the Marinhagens' notice of appeal was filed more than 30 days after the entry of judgment, it was filed less than 30 days after the May 6 denial of the Marinhagens' motion.

This takes us to the pivotal question whether the motion to alter or amend was timely filed.

K.S.A. 60-259(f) requires that a motion to alter or amend be served and filed not later than 10 days after entry of the judgment. At first blush, it would seem that the Marinhagens' motion to alter or amend was not timely filed inasmuch as its filing on March 28 was more than 10 days after the March 12 entry of judgment. However, the question is not so easily answered.

The statutory requirements and directions appear in these texts: K.S.A. 1991 Supp. 60-2103:

"(a) . . . [T]he time within which an appeal may be taken shall be 30 days from the entry of the judgment . . . . The running of the time for appeal is terminated by a timely motion made pursuant to [K.S.A. 60-259] . . . and the full time for appeal fixed in this subsection commences to run and is to be computed from the entry of [an order] made upon a timely motion . . . [g]ranting or denying a motion under . . . K.S.A. 60-259 . . . to alter or amend the judgment . . . ."

K.S.A. 60-259:

"(f) . . . A motion to alter or amend the judgment shall be served and filed not later than ten (10) days after entry of the judgment."

K.S.A. 1991 Supp. 60-206(a):

"In computing any period of time prescribed or allowed by this chapter, . . . the day of the act [or] event . . . from which the designated period of time begins to run shall not be included. The last day of the period so computed is to be included, unless it is a Saturday, Sunday or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, a Sunday or a legal holiday. When the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays and legal holidays shall be excluded in the computation."

K.S.A. 1991 Supp. 60-206(e):

"Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon such party and the notice or paper is served upon such party by mail, three days shall be added to the prescribed period."

The entry of the summary judgment and the service of the summary judgment order both occurred on March 12. In this case, therefore, the time of the triggering events under the foregoing statutes, namely, the entry of judgment (under K.S.A. 1991 Supp. 60-2103[a] and K.S.A. 60-259[f]) and service of the notice (under K.S.A. 1991 Supp. 60-206[e]), were the same.

Our Supreme Court has held:

"[W]here notice of the entry of judgment is mailed in compliance with K.S.A. 60-258 and Rule 134, the time for filing post-judgment motions or taking an appeal starts to run when the notice is mailed, and the three-day extension as provided in K.S.A. 60-206(e) applies. Since plaintiff's post-judgment motion was filed within 13 days [13 calendar days from September 2, 1986, to September 15, 1986] of the trial court's decision, the post-judgment motion effectively terminated the running of the time of the plaintiff to file an appeal. This court therefore has jurisdiction to address the present appeal . . . ." *Danes v. St. David's Episcopal Church*, 242 Kan. 822, 827, 752 P.2d 653 (1988).

Having held as it did in regard to the time within which a post-judgment motion to alter or amend must be filed, on the facts before it there was no need for the *Danes* court to further consider how, if at all, the less-than-11 day rule of K.S.A. 1991 Supp. 60-206(a) and the 3-day rule of K.S.A. 1991 Supp. 60-206(e) would interact and operate.

K.S.A. 1991 Supp. 60-206(a) and K.S.A. 1991 Supp. 60-206(e) are mirror images of Fed. R. Civ. Proc. 6(a) and 6(e). Accordingly, federal case authority concerning the interplay and operative effect of these sections is uniquely persuasive and recapitulated in *National Sav. Bank of Albany v. Jefferson Bank*, 127 F.R.D. 218, 220-22 (S.D. Fla. 1989), where the court said:

"National's second argument is that . . . Jefferson has failed to satisfy the 10-day requirement . . . . Specifically, National argues that Jefferson had only 13 calendar days in which to respond (10 days plus 3 mailing days), reasoning that, '[b]ecause Jefferson had more than 11 days, the intervening weekends and holidays were not excludable.' . . . Unfortunately, this misconception—that 3 mailing days are added to an originally prescribed period of less than 11 days for computation purposes—is a recurring one . . . .

"Rule 6(a) provides that '[w]hen the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation.' Rule 6(e) provides that 3 days shall be added to the prescribed period whenever a party is served by mail. Further, if the last day of the time period, as computed, falls on a weekend or legal holiday, a party has until the next non-holiday weekday to act under Rule (6)(a).

"National relies primarily on *Pagan v. Bowen*, 113 F.R.D. 667 (S.D. Fla. 1987), for the proposition that Rule 6(e)'s 3 mailing days should be added to the 10-day prescribed period resulting in a total of 13 days, which would then remove the total period from the operation of Rule 6(a)'s less-than-eleven day provision. This Court disagrees with *Pagan's* interpretation of the interaction between Rule 6(a) and Rule 6(e).

". . . Rule 6(e)'s 3-day period should not be added to an original period of less than 11 days for computation purposes.

"Professors Wright and Miller now endorse computing the time periods of 6(a) and 6(e) separately. In the 1987 edition of their treatise, the authors note three possible alternatives with respect to integrating Rules 6(a) and 6(e). *First*, the 3 days can be added to the original period . . . . *Second*, one can compute two separate time spans of 10 and 3 days excluding weekends and holidays from both . . . . *Finally*, one may compute the 10-day period, excluding weekends and holidays, and add separately 3 days for mailing. The authors find this alternative most preferable, 'because of its fidelity to the purposes of Rule 6(a) and 6(e), and because it avoids creating undesirable incentives for parties to choose one form of service over another.' 4A Wright & Miller, *Federal Practice and Procedure*, § 1171 (2d ed. 1987).

"Predictably, the third approach has been adopted by all the courts addressing the issue." (Emphasis added.)

We are persuaded and hold that the third of the three alternatives for time computation identified in *National Sav. Bank of Albany v. Jefferson Bank* is the better reasoned and correct method for time computation.

Applying the less than 11-day rule of K.S.A. 1991 Supp. 60-206(a) to the 10-day requirement of K.S.A. 60-269(f) gives plaintiffs until Tuesday, March 26. (March 16, 17, 23, and 24 were intervening Saturdays and Sundays.) Addition of three calendar days pursuant to K.S.A. 1991 Supp. 60-206(e) takes us to Friday, March 29. The March 28 filing of the motion to alter or amend was timely.

The Marinhagens' motion was timely. We have jurisdiction to review. We now turn to the merits of the appeal and begin with the facts. A rather detailed recitation of facts is necessary to understand the issues raised.

Shirley Marinhagen began working as a bookkeeper at Boster, Inc., a lumberyard, in March of 1968. Her husband Everett Marinhagen began working in the lumberyard in November of 1969. Shirley suffered an on-the-job injury on January 28, 1988, dislocating her left shoulder and bruising her right knee. On February 18, 1988, she obtained a release from Dr. Herrman, her treating physician, to return to her part-time job with H & R Block, but Dr. Herrman refused to allow her to return to work for the defendants. Defendants' insurance company voluntarily compensated Shirley for temporary total disability from the date of the injury through November of 1989, totaling 22 months. For

the period that she worked part time for H & R Block, her payments were reduced to temporary partial disability to reflect the wages she was earning.

On March 8, 1988, Shirley and Charles Boster discussed her ability to return to work. Shirley informed Charles Boster that she was currently unable to return to work and that she would have more information about her condition after her next doctor's appointment scheduled for April 8, 1988.

On March 9, 1988, Nita Boster informed Charles Boster that she saw Shirley working in the H & R Block office. Boster confronted Everett Marinhagen later that day to find out why Shirley was working for H & R Block but not working at Boster, Inc. The parties presented different versions of the conversation. Defendants claim that Boster requested Everett to relay a message to Shirley that she had to choose between working for H & R Block and working for Boster, Inc. Both parties agree that Boster fired Everett during the conversation. However, plaintiffs contend that Shirley was also fired during the conversation. Shirley also testified that later that evening Everett informed her that Boster had fired her. On March 16, 1988, Shirley sent a note to Boster requesting the return of her personal belongings and compensation for both Marinhagens' earned vacation pay.

The parties have disputed the date when Shirley was able to return to work. Defendants claim that Dr. Herrman never released Shirley to return to work at Boster, Inc., and that Dr. Healy released her on September 29, 1989. Plaintiffs provided an affidavit from Dr. Herrman releasing Shirley to return to work with a set of restrictions on June 10, 1988. The affidavit also stated that, at the time the affidavit was written, Dr. Herrman believed the restrictions would allow her to work at Boster, Inc.

Boster admitted that Mary Abdin, the vocational rehabilitation specialist assigned to Shirley's workers compensation case, contacted him on May 3, 1988, and informed him that Shirley wanted to return to work. However, neither party contacted the other to discuss Shirley's possible return to work because each of them believed that Abdin instructed the other party to initiate the contact. Boster hired a permanent replacement to fill Shirley's position in the latter part of May 1988.

Shirley continued to receive temporary total or temporary partial disability payments from Boster, Inc.'s insurer through November 1989. On March 5, 1990, plaintiffs filed their petition in this case alleging retaliatory discharge.

Plaintiffs argue as the primary basis of their appeal on the merits that the record contains disputed material facts which preclude summary judgment. We agree.

The standards for summary judgment are well settled in Kansas.

"The burden on the party seeking summary judgment is a strict one. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. On appeal we apply the same rule, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied." *Bacon v. Mercy Hosp. of Ft. Scott*, 243 Kan. 303, 306, 756 P.2d 416 (1988).

In *Stanfield v. Osborne Industries, Inc.*, 7 Kan. App. 2d 416, Syl. ¶ 7, 643 P.2d 1115, *aff'd in part and rev'd in part on other grounds* 232 Kan. 197, 654 P.2d 917 (1982), we stated:

"As a general rule, an appellate court, in examining the validity of a motion for summary judgment, should read the record in the light most favorable to the party who defended against the motion. It should accept such party's allegations as true, and it should give him the benefit of the doubt when his assertions conflict with those of the movant."

Plaintiffs brought this suit alleging that defendants fired them in retaliation for Shirley's pursuing her rights and remedies under the Workers Compensation Act. We have previously recognized such a cause of action as an exception to the general rule that an employee-at-will may be terminated for any reason. The employee must show that the employer required the employee to abandon his or her workers compensation claim in order to retain future employment, *Murphy v. City of Topeka*, 6 Kan. App. 2d 488, 630 P.2d 186 (1981), or that the discharge was based on the employee's absences due to a work-related injury. *Pilcher v. Board of Wyandotte County Comm'rs*, 14 Kan. App. 2d 206, Syl. ¶ 6, 787 P.2d 1204, *rev. denied* 246 Kan. 768 (1990). We explained the reason for creating the exception to the employment-at-will doctrine in *Murphy*, 6 Kan. App. 2d at 495-96, stating:

"We believe the public policy argument has merit. The Workmen's Compensation Act provides efficient remedies and protection for employees, and

is designed to promote the welfare of the people in this state. It is the exclusive remedy afforded the injured employee, regardless of the nature of the employer's negligence. To allow an employer to coerce employees in the free exercise of their rights under the act would substantially subvert the purpose of the act."

The record here discloses a conflict of evidence as to whether Shirley was terminated by defendants or voluntarily resigned. Everett asserts that Boster terminated both of them in a conversation on March 9, 1988. He gave an affidavit and deposition testimony to this effect. Boster, on the other hand, claims that he only terminated Everett and gave Shirley the choice of working for H & R Block or Boster, Inc. Boster further claims that Shirley sent him a note dated March 16, 1988, requesting her personal belongings and vacation pay. He claims that this note constitutes her resignation. Shirley, on the other hand, claims that she sent the note in response to being terminated on March 9. She claims that Boster could not have taken her March 16 note as a resignation since he filed a report on March 14 with Continental Western Insurance Company, his workers compensation carrier, in which he indicated that Shirley had quit at Boster, Inc., and taken a job at H & R Block.

Another material disputed fact concerns the health condition of Shirley during the months of May and June 1988. Boster waited until then to fill Shirley's position with another employee, and Shirley claims she could have returned to work by then. The materiality of her condition lies in the fact that neither *Murphy* nor *Pilcher* give rise to a retaliatory discharge claim if the injured worker cannot do his job and the employer, therefore, fills it after a reasonable time.

The trial court seems to have placed great weight on the fact that Shirley received and accepted temporary total and temporary partial benefits under the Workers Compensation Act. While that fact might be relevant and important, it does not conclusively provide a basis for summary judgment since the record contains other evidence, if believed in a light most favorable to Shirley, that she could have returned to work at the time Boster filled her position.

There is also conflicting evidence as to conversations Shirley and Boster had with Mary Abdin. Neither party offered testimony

from Abdin. Neither party communicated with each other during this period. Depending upon whom one believes, the trier of fact might determine either that Shirley quit since she never called Boster or that she waited for Boster to call her back to work and he never did. The trier of fact must determine whether Shirley resigned, whether Boster fired her, or whether an innocent miscommunication between the two of them led to Boster filling her position with someone else.

Construing the foregoing evidence in the light most favorable to plaintiffs, one must conclude that Boster terminated Shirley on March 9, 1988, that she was physically able to return to work at Boster, Inc., by May or June of 1988, and that Boster did not fill her position until June of 1988. No expressed justifiable reason existed then for the termination and one could infer the reason to be the retaliatory intent of Boster.

Plaintiffs' case perhaps rests to a great degree upon circumstantial evidence as do most discrimination and retaliation cases. 2A Larson's Workmen's Compensation Law § 68.36(c) (1992) suggests:

"Ordinarily the prima facie case must, in the nature of things, be shown by circumstantial evidence, since the employer is not apt to announce retaliation as his motive. Proximity in time between the claim and the firing is a typical beginning-point, coupled with evidence of satisfactory work performance and supervisory evaluations."

Even though much of plaintiffs' case finds its basis in such circumstantial evidence, the record must preclude summary judgment at this point. A party's intent must usually be proven by circumstantial evidence, and summary judgment is rarely appropriate in such instances. "A court should be cautious in granting a motion for summary judgment when resolution of the dispositive issue necessitates a determination of the state of mind of one or both of the parties." *Stanfield v. Osborne Industries, Inc.*, 7 Kan. App. 2d 416, Syl. ¶ 8. See *Henrickson v. Drotts*, 219 Kan. 435, 438, 548 P.2d 465 (1976).

We hold that the district court should have denied defendant's motion for summary judgment because a genuine dispute as to material facts existed.

We now turn to the claim of Everett Marinhagen. In discussing it, the trial court concluded that the exception to the employee-

at-will doctrine expressed in *Murphy*, 6 Kan. App. 2d 488, does not extend to spouses; therefore, Mr. Marinhagen has no grounds for recovery because he has not filed a workers compensation claim.

The trial court relied on *Aquino v. Sommer Maid Creamery, Inc.*, 657 F. Supp. 208 (E.D. Pa. 1987), which dealt with termination of a non-injured spouse after the injured spouse pursued workers compensation claim remedies. The federal court noted that the Pennsylvania Supreme Court had not yet dealt with the issue of whether the injured spouse has a cause of action for retaliatory discharge. We believe that that distinguishes *Aquino* from this case since Kansas already has recognized the right of an injured worker to sue for retaliatory discharge in *Murphy*.

By analogy, § 704 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3 (1988), prohibits an employer from discriminating against an employee because he or she has filed a claim or opposed an unlawful practice under the Act. A few federal district courts have held that this provision also protects a third party from retaliation based on the filing of a Title VII complaint by a close relative. See *Mandia v. Arco Chemical Co.*, 618 F. Supp. 1248 (W.D. Pa. 1985); *De Medina v. Reinhardt*, 444 F. Supp. 573 (D.D.C. 1978); *Kornbluh v. Stearns & Foster Co.*, 73 F.R.D. 307 (S.D. Ohio 1976). In *De Medina*, 444 F. Supp. at 580, the court stated:

"In enacting section 2000e-3, Congress unmistakably intended to ensure that no person would be deterred from exercising his rights under Title VII by the threat of discriminatory retaliation. Since tolerance of third-party reprisals would, no less than the tolerance of direct reprisals, deter persons from exercising their protected rights under Title VII, the Court must conclude . . . that section 2000e-3 proscribes the alleged retaliation of which plaintiff complains."

Similarly, allowing an employer to retaliate against one spouse because the other spouse has exercised his or her right under the Workers Compensation Act would frustrate the purpose of the Court of Appeals' opinion in *Murphy* to protect employees by allowing them to freely exercise their rights under the Act.

The parties all agree that Boster terminated Everett during their conversation on March 9, 1988, and allowed him to remain at work until March 16. The trial court concluded that Boster

fired him because he was giving evasive answers about Shirley's condition during the March 9 meeting. The Marinhagens claim, however, that Everett was terminated because Shirley exercised her rights under the Workers Compensation Act, which included the right to work for another employer during the time she was temporarily disabled from working for defendants. The record contains circumstantial evidence to support the Marinhagens' claims and, therefore, the trial court erred in granting summary judgment against Everett. The trier of fact must determine Boster's reasons for terminating Everett.

The trial court dismissed all claims against defendant Nita Boster on the grounds that the record lacked evidence of any wrongdoing by her. We agree. Plaintiffs do not challenge that finding on appeal, and we will not disturb that ruling.

The other points raised by the Marinhagens as to whether the summary judgment motion was properly before the court and whether the trial court erred in denying their motion to reconsider are rendered moot in light of our foregoing opinion.

Reversed and remanded for further proceedings.