**Millisa MADRIGAL, Plaintiff,**

v.

**IBP, INC., Defendant.**

**Civ. A. No. 91–1392–MLB.**

United States District Court,
D. Kansas.

Jan. 20, 1993.

Jim Lawing, Wichita, KS, for plaintiff.

William H. Dye, Foulston & Siefkin, Wichita, KS, for defendant.

MEMORANDUM AND ORDER

BELOT, District Judge.

This case comes before the court on IBP's motion for summary judgment. (Doc. 11) Madrigal does not controvert IBP's statement of uncontroverted facts.

IBP is a corporation that operates a meat processing plant in Emporia, Kansas. Madrigal and her mother, Evelyn Roskob, applied for employment with IBP on September 26, 1989. Both Madrigal and Roskob were hired and began employment on October 9, 1989. At all times during her tenure at IBP, Madrigal was an at-will employee. Madrigal received three days of orientation on such matters as safety and company employment policies, such as the attendance policy, as well as a copy of IBP's employee handbook when she began work. IBP subjected new employees to a 90-day probationary period.

Evelyn Roskob was injured[1] on the job on October 25, 1989. Roskob filled out an employer's accident report to be filed with the Kansas Workers' Compensation Director's office the following day.

On October 26, 1989, Madrigal was notified that she was assigned to work on October 28, 1989. On the morning of October 28, as Madrigal and Roskob prepared to depart for work, they noticed that Madrigal's truck tire had been vandalized, rendering the truck inoperable. Madrigal informed IBP they could not make it to work on time and Madrigal's supervisor responded, "Okay, don't worry."

Madrigal and Roskob, who resided together, had planned to move their residence from Severy, Kansas, to Americus, Kansas, on October 29, 1989. Madrigal had arranged to rent a U-Haul truck in Emporia on the afternoon of October 28. Before picking up the U-Haul, Madrigal and Roskob decided to move some personal items into their new residence that day. IBP supervisors observed Madrigal and Roskob as they were moving these items. After moving the items, Madrigal and Roskob picked up the U-Haul and went back to Severy.

When they reported to work on October 30, 1989, Madrigal and Roskob were escorted to a meeting with three IBP supervisors. Madrigal was individually questioned about the events of October 28, 1989. She testified she had no recollection of any mention of a workers' compensation claim by Roskob during her conversation with the IBP supervisors. Madrigal was discharged from her employment that same day for "giving false information why absent," according to IBP records.

Roskob had not filed a claim for workers' compensation benefits at the time of Madrigal's discharge on October 30, 1989.[2] Madrigal thereafter filed her complaint.

### STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the moving party can demonstrate that there is no genuine issue of material fact and is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). "Entry of summary judgment is mandated, against a party who 'fails to make a showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Aldrich Enters., Inc. v. United States,* 938 F.2d 1134, 1138 (10th Cir.1991) (quoting *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552). Once the moving party properly supports its motion, the nonmoving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202; *Devery Implement Co. v. J.I. Case Co.,* 944 F.2d 724, 726 (10th Cir.1991). The court reviews the evidence in a light most favorable to the non-moving party, *e.g., Washington v. Board of Public Utilities,* 939 F.2d 901, 903 (10th Cir.1991), under the substantive law and the eviden-

---

**1.** The record does not reflect the nature of Roskob's injury.

**2.** Roskob filed a claim for workers' compensation benefits some time in November, 1989.

tiary burden applicable to the particular claim. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2514.

### DISCUSSION

■ IBP argues this case is governed by the employment-at-will doctrine. The doctrine holds that in the absence of a contract, express or implied, between an employee and her employer covering the duration of employment, the employment is terminable at the will of either party. *Johnson v. National Beef Packing Co.,* 220 Kan. 52, 54, 551 P.2d 779 (1976). Madrigal, on the other hand, argues her discharge violates public policy and falls within an exception to the employment-at-will doctrine. She contends her discharge was in retaliation for supporting Roskob's workers' compensation claim and also violates the public policy embodied in K.S.A. 44–615.[3]

■ The Kansas appellate courts have recognized a number of exceptions to the employment-at-will doctrine. One such exception

> has been recognized in suits of a tort nature for retaliatory discharge based on the theory that dismissal of employees for reasons violative of a particular public policy are actionable. Conduct of an employer violative of public policy and giving rise to a cause of action has been recognized when an employee is discharged in retaliation for opposing an illegal or unethical activity of the employer, in retaliation for filing workers compensation claims, in retaliation for exercising rights under labor-management relations statutes, as a penalty for refusing to take a polygraph exam, as a penalty for taking time to serve on jury duty, and for various other violations of public policy interests.

*Brown v. United Methodist Homes for the Aged,* 249 Kan. 124, 135, 815 P.2d 72 (1991). (Citation omitted)

In *Murphy v. City of Topeka,* 6 Kan. App.2d 488, 630 P.2d 186 (1981), the Kansas Court of Appeals held an employee-at-will discharged in retaliation for filing a claim under the Workers' Compensation Act could maintain a cause of action in tort against the employer for wrongful discharge. *Id.* at 495–96, 630 P.2d 186. *Murphy* has been extended to cover situations where the employee claims he or she was injured on the job, the employer knew that the employee intended to file a workers' compensation claim, and the employee was discharged in retaliation. *Chrisman v. Philips Industries, Inc.,* 242 Kan. 772, 775, 751 P.2d 140 (1988). Madrigal seeks to extend the *Murphy* holding to recognize a cause of action for a discharged employee-at-will who supports another employee's workers' compensation claim.

In *Marinhagen v. Boster, Inc.,* 17 Kan. App.2d 532, 840 P.2d 534 (1992), the court considered whether an employer could discharge a non-injured spouse in retaliation for the injured spouse exercising her rights under the Workers' Compensation Act. In *Marinhagen,* Shirley and Everett Marinhagen were employed at Boster, Inc., a lumberyard in Salina, Kansas. Shirley Marinhagen sustained an on-the-job injury to her left shoulder and right knee. Three weeks after her injury, Shirley was released by her physician to return to work at her part-time job with H & R Block, but her physician refused to allow her to return to work for Boster. Two and a half weeks later, Shirley and Charles Boster discussed her ability to return to work. Shirley informed Charles Boster that she was currently unable to return to work but would have more information about her condition after her next doctor's appointment thirty days hence. The next day, Nita Boster informed Charles Boster that she had seen Shirley working in the H & R Block office. Charles Boster confronted Everett Marinhagen about the situation. Everett Marin-

---

**3.** In her response to IBP's motion, Madrigal contends she was wrongfully discharged in retaliation for telling the truth to IBP management about why she and Roskob had not shown up for work on the previous Saturday. (Doc. 13 at 1–2) At earlier proceedings, Madrigal's attorney stated her claim was wrongful discharge based on Roskob's filing a workers' compensation claim.

hagen was fired during the course of the conversation.

The court noted that under federal law, employees were protected from retaliatory discharge based on the filing of a Title VII complaint by a close relative. *Id.* at 541, 840 P.2d 534. (Citations omitted) The court believed that likewise under state law, allowing an employer to retaliate against one spouse because the other had exercised his or her right under the Workers' Compensation Act would undermine the holding in *Murphy* to protect employees who freely exercise their rights under the Act. *Id.* The court held that Everett could state a cause of action for wrongful discharge. *Id.* at 542, 840 P.2d 534.

■ *Marinhagen* involved a husband-wife relationship. The case before us presents a mother-daughter relationship. Although the holding of *Marinhagen* specifically covers a spousal relationship, the court's reference to close relatives in its citation to federal case law under Title VII makes the court believe that Kansas law would recognize .that a parent-child relationship falls within the ambit of protection from retaliatory discharge for filing a workers' compensation claim.

■ The court must next examine whether Madrigal has sufficiently alleged a nexus between her discharge and Roskob's intent to exercise her rights under the Workers' Compensation Act. *See Brown,* 249 Kan. at 145, 815 P.2d 72. Madrigal has the burden to prove her retaliatory discharge claim by clear and convincing evidence. *See Palmer v. Brown,* 242 Kan. 893, 900, 752 P.2d 685 (1988) (employee who alleges retaliatory discharge for whistleblowing has burden of proving their claim by clear and convincing evidence); *Pilcher v. Board of Wyandotte County Comm'rs,* 14 Kan.App.2d 206, 214, 787 P.2d 1204, *rev. denied* 246 Kan. 768 (1990).

■ IBP argues Madrigal was discharged because she lied about her reasons for being absent from work on October 28, 1989. On that day, IBP supervisors witnessed Madrigal moving items into her new residence approximately six hours after Madrigal had advised IBP that she was unable to make it to work on time because of transportation problems. Madrigal was confronted about this incident by IBP company supervisors on the following Monday, October 30, 1989. No mention was made of Roskob's workers' compensation claim during Madrigal's individual meeting with the IBP supervisors. During a subsequent meeting between Madrigal, Roskob, and the IBP supervisors, Roskob's workers' compensation claim was discussed, but according to Madrigal, "she was just in there listening."

In the court's view, Madrigal has failed to come forward with evidence by which a jury could find by clear and convincing evidence that she was discharged in retaliation for Roskob's intent to file a workers' compensation claim. Madrigal's argument that she was discharged for giving testimony corroborating Roskob's explanation for missing work is unsupported by any reference to evidence in the record.[4] *See Lewis v. City of Ft. Collins,* 903 F.2d 752, 759 (10th Cir.1990). A bald allegation that IBP's actions in discharging her from its employment were motivated by Roskob's intent to file a workers' compensation claim is insufficient to avoid entry of summary judgment under the standards enunciated in *Anderson.*

Madrigal's claim that she was discharged for exercising her rights under K.S.A. 44–615 is equally without support in the record. Madrigal's mother had not even filed a workers' compensation claim at the time of Madrigal's discharge on October 30, 1989, and Madrigal did not testify as a witness in Roskob's case until January 12, 1990. The court finds as a matter of law that Madrigal cannot establish her discharge was motivated by testimony before the Secretary of Human Resources.

---

**4.** Even if this court were to interpret Madrigal's argument to be that she refused to give damaging testimony to counter Roskob's workers' compensation claim, it is undisputed that she was never asked by IBP personnel about the subject.

IBP's motion (Doc. 11) for summary judgment is granted.

IT IS SO ORDERED.