(885 P.2d 391)

No. 70,459

SHERRI KAY MOYER and JON R. MOYER, *Appellees*, v. ALLEN FREIGHT LINES, INC., *Appellant*.

Opinion filed December 2, 1994.

*Michael J. Abrams*, of Gage and Tucker, of Overland Park, and *Robert J. Harrop*, of Gage & Tucker, of Kansas City, Missouri, for appellant.

*Stacie Kennon Gram*, of Mustain, Higgins, Kolich, Lysaught & Tomasic, Chartered, of Kansas City, for appellees.

Before BRISCOE, C.J., LEWIS and GREEN, JJ.

GREEN, J.: This appeal arises from wrongful discharge actions brought by plaintiffs Sherri Kay Moyer (Kay) and Jon R. Moyer (Jon), husband and wife, against Allen Freight Lines, Inc. (Allen Freight). Allen Freight appeals, contending the trial court erred by denying its motion for directed verdict on plaintiffs' retaliatory discharge claims and Kay's claim for punitive damages.

In early February 1992, both plaintiffs were terminated by Allen Freight Lines. At that time, Kay and Jon were city drivers on

the Riverside route, which involved transporting car seats from the Riverside seat plant to the General Motors plant in the Fairfax District of Kansas City, Missouri.

Kay went to work for Allen Freight in August 1989, as a truck driver. When she was terminated on February 6, 1992, she was the most senior driver on the Riverside route. At various times during her employment, Kay observed certain equipment failures that occurred to her truck and she reported those failures to Allen Freight's management. She also complained to Allen Freight's management about excessive overtime hours worked by the drivers. Jon was hired in June 1991 as a city driver and was eventually assigned to the Riverside route in late June 1991.

When General Motors would temporarily shut down its manufacturing plant, Allen Freight would lay off drivers on the Riverside route. During that period, Allen Freight would call in the laid-off drivers if any temporary driving work became available. On February 3, 1992, during a temporary layoff, Jon was called into work and was asked to clean the battery cables of a truck. Believing he lacked the necessary clothing and tools to do the job, he refused to perform the work. As a result of his refusal, Jon was terminated.

In early January 1992, Allen Freight learned General Motors intended to reduce its work force to one shift at the Fairfax plant in March. In response, Allen Freight planned to reduce its Riverside route shifts from two to one, and on February 6, 1992, Kay was terminated.

Plaintiffs then brought their retaliatory discharge actions. Kay alleged that she had been wrongfully terminated in retaliation for: (1) filing a workers compensation claim; (2) being absent from work due to illness; (3) making complaints to management about Allen Freight's infractions which affected public health, safety, and welfare; and (4) filing a claim for unemployment benefits. Jon alleged he had been wrongfully terminated in retaliation for: (1) his filing a claim for unemployment benefits; and (2) his wife's persistent complaints to management.

After presentation of plaintiffs' evidence, Allen Freight moved for directed verdict on all claims. The trial court denied this mo-

tion except for Kay's claim of being absent from work due to illness. The trial court granted plaintiffs' motion to allow the jury to determine if plaintiffs were entitled to punitive damages.

The jury awarded Kay $15,500 and Jon $12,000 in actual damages, and following a separate hearing, the court awarded Kay $40,000 in punitive damages. Allen Freight timely appealed.

Allen Freight argues the trial court erred in failing to grant its motion for directed verdict on Kay's claim of retaliatory discharge. Allen Freight contends Kay's alleged complaints do not pertain to the public health, safety, and general welfare concerns protected by the tort of retaliatory discharge for "whistle-blowing."

Our standard of review is as follows:

"'In ruling on a motion for directed verdict pursuant to K.S.A. [1993 Supp.] 60-250, the court is required to resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought and where reasonable minds could reach different conclusions based on the evidence the motion must be denied and the matter submitted to the jury. This rule must also be applied when appellate review is sought on a motion for directed verdict.' " *Simon v. National Farmers Organization, Inc.*, 250 Kan. 676, 683, 829 P.2d 884 (1992).

Kansas courts have recognized several public policy exceptions to the employment-at-will doctrine, which allows either employer or employee to terminate the employment relationship for any or for no reason, at any time. One of those exceptions recognized by our Kansas Supreme Court is called the whistle-blower's exception. In *Palmer v. Brown*, 242 Kan. 893, 900, 752 P. 2d 685 (1988), the court declared:

"Public policy requires that citizens in a democracy be protected from reprisals for performing their civil duty of reporting infractions of rules, regulations, or the law pertaining to public health, safety, and the general welfare. Thus, we have no hesitation in holding termination of an employee in retaliation for the good faith reporting of a serious infraction of such rules, regulations, or the law by a co-worker or an employer to either company management or law enforcement officials (whistle-blowing) is an actionable tort. *To maintain such action, an employee has the burden of proving by clear and convincing evidence, under the facts of the case, a reasonably prudent person would have concluded the employee's co-worker or employer was engaged in activities in violation of rules, regulations, or the law pertaining to public health, safety, and the general welfare; the employer had knowledge of the employee's reporting of such violation*

*prior to discharge of the employee; and the employee was discharged in retaliation for making the report.* However, the whistle-blowing must have been done out of a good faith concern over the wrongful activity reported rather than from a corrupt motive such as malice, spite, jealousy or personal gain." (Emphasis added.)

At trial, Kay testified she had made complaints to the management of Allen Freight of the following: (1) that drivers were repeatedly required to work excessive overtime, sometimes up to 84 hours per week; (2) that her truck's brake lines froze; (3) that on numerous occasions the tires on her truck were flat; (4) that she was told to continue to drive her truck after the power steering pump failed; and (5) that someone pulled a safety pin used to secure the trailer to her truck. Kay also testified she had complained to a federal Department of Transportation (DOT) inspector of broken equipment which could cause her truck brakes to lock up or freeze. According to her testimony, those reported equipment failures represented a serious threat to public safety because of the dangers of driving unsafe trucks on the highway. She further claimed the reported equipment failures were in violation of DOT safety regulations.

Allen Freight first argues Kay's reporting of equipment failures cannot be considered whistle-blowing because its company policy requires employees to report equipment failures. Nevertheless, this argument ignores the public policy considerations for the whistle-blowing exception.

The public policy of protecting employees from retaliatory discharge is to ensure that infractions of rules, regulations, or laws pertaining to public health and safety are properly reported. 242 Kan. at 900. Accordingly, whether an employee is encouraged or is required to make such reports does not absolve an employer from liability for firing an employee for making such reports.

Here, the evidence shows Kay made numerous reports of equipment failures, and Allen Freight's management was displeased with Kay's continual reporting of those equipment failures. For example, a former employee of Allen Freight testifying on behalf of Kay and Jon stated that he had overheard one of Allen Freight's managers express a desire to terminate Kay. The

former employee further testified management was upset with Kay because of her equipment complaints.

Next, Allen Freight argues Kay's complaints of equipment failures did not relate to violations of rules, regulations, or laws pertaining to public health, safety, and general welfare. Allen Freight contends Kay's reporting of equipment failures is similar to reporting everyday work problems such as reporting a broken typewriter or reporting of over-withholding of income taxes from an employee's paycheck. Allen Freight argues if this type of reporting is protected then the employee-at-will doctrine is literally eviscerated. Although Allen Freight cites no authority for its position, support can be found for this position in the recent case of *Herman v. Financial Corp.*, 254 Kan. 870, 869 P.2d 696 (1994).

In *Herman*, the plaintiff alleged she was terminated for complaining to management of irregularities in a loan application in violation of defendant's internal bank loan policies. In affirming the trial court's summary judgment in favor of defendant, the court stated:

"[Plaintiff] confuses the public policy of prohibiting terminations due to whistleblowing . . . with the more basic idea of categorizing a savings and loan association's granting a loan where the application does not meet underwriting guidelines as 'an unlawful or improper act of his or her employer.' Whether the granting of such a loan constitutes an unlawful or improper act is the question which the district court answered in the negative. That is, the district court correctly concluded that it did not violate 'rules, regulations, or the law pertaining to public health, safety, and general welfare.' " 254 Kan. at 882.

Unlike *Herman* and Allen Freight's two aforementioned analogies, Kay claimed her reported complaints involved violations of DOT regulations. No evidence was introduced that contradicted Kay's claim that the equipment failures were violations of DOT regulations. Moreover, Kay testified the DOT once pulled her truck over to inspect it for equipment failures. While inspecting her vehicle, the DOT inspectors wrote her up for certain equipment failures and warned her to report those failures to her employer. Clearly, the purpose of DOT regulations is to ensure the safety and general welfare of the public by requiring all trucks on public highways meet certain minimum safety requirements.

Because Kay testified she was instructed to continue to drive her truck although its brakes were frozen and to drive her truck on a flat tire, her reporting of those and other equipment failures should be protected as reports of violations of regulations pertaining to the public's safety and welfare.

Allen Freight next argues that because Kay failed to make any reports of equipment failures outside the company, her claim does not fall within the *Palmer* public policy exception. Although Kay contends she reported the equipment failures to DOT, the evidence shows she only mentioned some equipment failures to an inspector after her truck was pulled over for an inspection. We conclude the mentioning of equipment failures to a DOT inspector while her truck was being inspected does not rise to the level of reporting to an outside agency a serious infraction of a rule, regulation, or law affecting public health, safety, or general welfare. Nevertheless, *Palmer* does not require an employee to report the serious infraction to an outside agency. On the contrary, an employee may report a serious infraction of a rule, regulation, or law *to either company management or law enforcement officials.* 242 Kan. at 900.

In summary, the record establishes two possible reasons for Kay's termination. Kay contends she was terminated for reporting truck equipment failures to company management, while Allen Freight contends Kay was terminated because General Motors reduced the Riverside route to one shift. Because reasonable minds could differ as to the actual reason Kay was terminated, the trial court properly denied Allen Freight's directed verdict motion on her claim of retaliatory discharge.

Allen Freight next argues that if we conclude some of Kay's reports to management would not justify a whistle-blowing claim, the jury verdict should be reversed. Allen Freight contends the jury instructions allowed the jury to base its verdict on complaints that are not protected by the whistle-blowing exception. We, however, will not consider this argument for the following reasons.

First, the record on appeal does not include the complained-of jury instructions. "A party must designate an adequate record on appeal to substantiate contentions made to the appellate court.

Without such a record, claims of alleged error must fail. Assertions in an appellate brief are not sufficient to satisfy inadequacies in the record on appeal." *Eisenhut v. Steadman,* 13 Kan. App. 2d 220, 223, 767 P.2d 293 (1989).

Second, this issue is being raised for the first time on appeal. "A point not raised before or presented to the trial court cannot be raised for the first time on appeal." *Diversified Financial Planners, Inc. v. Maderak,* 248 Kan. 946, 948, 811 P.2d 1237 (1991).

Allen Freight next argues the trial court erred in submitting the issue of punitive damages to the jury. Allen Freight contends Kay failed to present any evidence to show its actions were malicious, vindictive, willful, or wanton. In explaining the requirements for punitive damages, our Supreme Court stated:

"In Kansas, punitive damages are awarded to punish the wrongdoer for his malicious, vindictive, or willful and wanton invasion of another's rights, with the ultimate purpose being to restrain and deter others from the commission of similar wrongs. [Citation omitted.] A jury may consider an award of punitive damages if any reasonable view of the evidence would support such an award. [Citation omitted.] 'To constitute wantonness, the acts complained of must show not simply lack of due care, but that the actor must be deemed to have realized the imminence of injury to others from his acts and to have refrained from taking steps to prevent the injury because indifferent to whether it occurred or not.' [Citations omitted.]" *Folks v. Kansas Power & Light Co.,* 243 Kan. 57, 72, 755 P.2d 1319 (1988).

Allen Freight argues Kay failed to show any action on its part which was wanton, malicious, or vindictive because Kay's complaints about truck equipment failures did not go unheeded and the complained-of failures were repaired. Allen Freight's argument, however, misunderstands the nature of Kay's punitive damage claim.

In seeking punitive damages, Kay alleged Allen Freight's action in terminating her was wanton, willful, and malicious. Kay presented evidence that Allen Freight offered no explanation as to why she was being terminated.

The evidence shows Allen Freight's later suggested reason for Kay's termination, the workforce reduction, was a pretext. For instance, as a general rule, Allen Freight terminated and laid off employees in reverse order of seniority. Because Kay had more

seniority than any other driver on the Riverside route, she should have been the last driver to be terminated. Instead, she was the second of the four drivers to be terminated. Also, as noted earlier, evidence was presented that the management disliked Kay for her aggressive reporting of equipment failures on the trucks she drove. Considering the evidence presented, the jury could reasonably have believed Allen Freight had acted willfully, maliciously, and wantonly in terminating Kay.

Allen Freight next argues the trial court erred in denying its motion for directed verdict on Jon's retaliatory discharge claim because the whistle-blowing exception does not protect Jon from being terminated in retaliation for his spouse's persistent complaints to management. Furthermore, Allen Freight contends no evidence was presented to support his claim.

Allen Freight concedes Kansas law protects a spouse from termination in retaliation for his or her spouse's actions, if those actions are protected by statute. *Marinhagen v. Boster, Inc.*, 17 Kan. App. 2d 532, 840 P.2d 534 (1992), *rev. denied* 252 Kan. 1092 (1993). Allen Freight, however, argues this protection should not be extended to protecting Jon for Kay's whistle-blowing action because the holding in *Marinhagen* should be limited to workers compensation actions.

In *Marinhagen*, we declared:

"[A]llowing an employer to retaliate against one spouse because the other spouse has exercised his or her right under the Workers Compensation Act would frustrate the purpose of the Court of Appeals' opinion in *Murphy [v. City of Topeka*, 6 Kan. App. 2d 488, 630 P.2d 186 (1981)] to protect employees by allowing them to freely exercise their rights under the Act." 17 Kan. App. 2d at 541.

The rationale used in *Marinhagen* to protect a spouse in a workers compensation claim is equally persuasive in the context of the whistle-blowing exception. In other words, allowing an employer to retaliate against one spouse because the other spouse has reported infractions of rules, regulations, or laws pertaining to public health, safety, and general welfare would frustrate an important public policy. Therefore, we conclude a spouse shall be protected from termination by an employer in retaliation for the actions of the other spouse in reporting infractions of rules,

regulations, or laws pertaining to public health, safety, and general welfare.

Next, Allen Freight argues Jon and Kay failed to present evidence to support Jon's claim he was terminated in retaliation for his wife's persistent complaints to management. Allen Freight contends Jon was terminated on February 3, 1992, for refusing to clean corroded battery cables as requested by his superior. He was terminated only after being warned that his refusal to do the work would cause termination. Jon does not dispute the facts surrounding his termination, but argues Allen Freight's using his refusal to clean corroded battery cables as a basis for his termination was only a pretext. He claims the real reason he was terminated was to force his wife to quit.

Allen Freight argues no direct evidence was presented to establish Jon was terminated for his wife's actions. Allen Freight points out Jon admitted he lacked specific facts to establish his claim and he was speculating on the reason for his termination. Nevertheless, as Jon and Kay correctly note, Allen Freight's motivation can be established by circumstantial evidence.

In *Marinhagen*, we said:

"Plaintiffs' case perhaps rests to a great degree upon circumstantial evidence as do most discrimination and retaliation cases. 2A *Larson's Workmen's Compensation Law* 68.36(c) (1992) suggests:

'Ordinarily the prima facie case must, in the nature of things, be shown by circumstantial evidence, since the employer is not apt to announce retaliation as his motive. Proximity in time between the claim and the firing is a typical beginning-point, coupled with evidence of satisfactory work performance and supervisory evaluations.' " 17 Kan. App. 2d at 540.

In denying Allen Freight's motion for directed verdict, the trial court found Jon and Kay had presented evidence to support Jon's claim. Given Jon's overall good job performance with the company and his treatment as compared to other employees who had refused to perform assigned repair work, the trial court determined those circumstances gave rise to an inference he was terminated in retaliation for his wife's actions.

To support Jon's claim that he was terminated to prompt his wife to quit, he contends that another employee who had refused

to do work had not been terminated. Jon's primary evidence was the testimony of a former driver at Allen Freight, Charles Kettron. Kettron testified that he had refused to install a stereo in a truck because he was not an electrician. On cross-examination, he testified he had never installed a stereo in a truck before nor had he ever performed any sort of mechanical or maintenance type work on trucks. Nevertheless, Kettron's situation is distinguishable from Jon's refusal to work in several ways. First, before becoming a driver, Jon had worked in Allen Freight's maintenance shop and had on numerous occasions cleaned battery cables, while Kettron testified he had no prior experience as an electrician or a mechanic. Second, the skill required to install a stereo is more technical than the skill needed to clean corroded battery cables. Finally, after Jon refused to clean the battery cables, another driver cleaned the cables without any difficulty. Nevertheless, when Kettron refused to install the stereo in the truck, the truck was taken off-site to have the stereo installed.

In *Ortega v. IBP, Inc.*, 255 Kan. 513, 874 P.2d 1188 (1994), our Kansas Supreme Court stated a plaintiff must prove his or her claim by clear and convincing evidence. After resolving all facts and inferences reasonably to be drawn from the evidence in favor of Jon, we conclude reasonable minds would have concluded that Allen Freight terminated Jon for his refusal to clean the corroded battery cables. Therefore, the trial court erred when it failed to grant Allen Freight's directed verdict motion on Jon's retaliatory discharge claim.

Affirmed in part and reversed in part.

LEWIS, J., concurring: I concur with the majority opinion. I write this concurring opinion because I am logically and intellectually inclined to the dissent of Chief Judge Briscoe.

I reluctantly become a part of the majority because of what I perceive to be the law of *Palmer v. Brown*, 242 Kan. 893, 752 P.2d 685 (1988). In that opinion, our Supreme Court has said, it appears to me, that whistle-blowing may be shown by proof that the infraction was reported *in-house to company management*. In this case, the evidence indicates that the only place Kay

reported infractions was to the management of Allen Freight Lines, Inc. Since I believe this amounts to "whistle-blowing" under *Palmer*, I feel I am required to follow that decision and vote to affirm.

I disagree with the language in *Palmer* which suggests that "whistle-blowing" may take place if an infraction is reported to company management. "Whistle-blowing" has traditionally been viewed as an act in which the reporting party reports illegal or unsafe practices to an outstanding enforcement agency. It is justified by the theory that such reports favor public policy, safety, and well-being and should not be punished. It is difficult to see the same benefit to the public when the complaints do not reach anyone outside of the business for which the "whistle-blower" works.

I view the extension of the tort of "whistle-blowing" to in-house complaints as illogical. It appears to me to expand this tort far beyond what it was ever intended to be.

It is possible that I have misread *Palmer* and it does not support the majority decision. This is an issue which should be clarified by our Supreme Court. I would urge that court to return to the question and to use this appeal as a vehicle for clarification and refinement. These facts provide the perfect chance to clarify *Palmer*, and it is my hope that the court will do so.

BRISCOE, C.J., concurring and dissenting: I concur in the majority's reversal of the judgment in favor of Jon Moyer and dissent from the affirmance of the judgment in favor of Kay Moyer. I disagree with the majority's conclusion that Kay is entitled to recover under the wrongful discharge theory she espouses. Kay has failed to carry her evidentiary burden in establishing that she is entitled to recover as a whistle-blower. If Kay's claim fails, Jon's claim must also fail. He contends that he is entitled to recover because his termination was, in effect, further retaliation against Kay for her whistle-blowing. Therefore, although I concur in the reversal of the judgment in favor of Jon, I would reverse the judgment for a reason different from that set forth by the majority.

The acts of whistle-blowing which serve as a basis for the affirmance of this judgment are complaints made by Kay to her immediate employer, Allen Freight, about her employer's failure to properly maintain equipment (see page 10 of majority opinion). In those jurisdictions where such internal reporting can serve as a basis for a wrongful discharge claim, these claims are referred to as "internal whistle-blowing." *Sheets v. Teddy's Frosted Foods, Inc.,* 179 Conn. 471, 427 A.2d 385 (1980); *Petrik v. Monarch Printing Corp.,* 111 Ill. App. 3d 502, 444 N.E. 2d 588 (1982). It is important to note that the majority does not rely upon conduct which would be defined as "external whistle-blowing" as a basis for affirmance of this judgment. The conduct which serves as a basis for Kay's claim does not involve Kay's "reporting of a serious infraction of such rules, regulations, or the law by a co-worker or an employer" *to an outside entity. Palmer v. Brown,* 242 Kan. 893, 900, 752 P.2d 685 (1988). The majority does not rely upon her mentioning of equipment failures to a DOT inspector after her truck was pulled over as the basis for her whistle-blower claim.

We are then in this case concerned with whether Kansas distinguishes between external whistle-blowing and internal whistle-blowing and, more specifically, whether Kansas recognizes internal whistle-blowing as a viable basis for a wrongful discharge claim. Kansas has long held that, in the absence of an express or implied contract between an employer and an employee regarding the duration of employment, either party is free to end the employment at any time for any reason. *Johnston v. Farmers Alliance Mutual Ins. Co.,* 218 Kan. 543, 546, 545 P.2d 312 (1976). Although this employment-at-will doctrine had several exceptions, prior to the Kansas Supreme Court's decision in *Palmer,* at-will employees discharged in Kansas for whistle-blowing had no cause of action. In *Palmer,* the court held the retaliatory discharge for whistle-blowing of an employee-at-will is an actionable tort.

Under the facts presented in *Palmer,* an experienced medical technician alleged she was fired by Associates in Family Care, P.A., (AFC) where she administered AFC's in-house lab. She had information that at least one physician at AFC was billing Med-

.icaid for lab work which had not been performed. Prior to her discharge, one of the physicians at AFC sought her assurance that she would keep AFC's billing practices secret. When she refused to assure him she would not report the practices "to appropriate authorities," he told her she could not be trusted and warned her if she said anything to anyone she would not be given permanent status with AFC. When she transmitted information to unspecified authorities which she said supported her suspicions of Medicaid fraud, she was fired. Her act of whistle-blowing which she alleged was the reason for her discharge was her reporting to "unspecified authorities" information which supported her suspicion of Medicaid fraud at AFC.

In determining whether she had stated a claim for retaliatory discharge, the court referenced decisions from foreign jurisdictions, all of which involved the discharge of employees for reporting illegal activity to *outside* authorities.

"Several jurisdictions have provided common-law 'whistle-blower' protection for employees discharged for reporting illegal activity. See, *e.g., Vermillion v. AAA Pro Moving & Storage,* 146 Ariz. 215, 704 P.2d 1360 (1985) (employee told customer of employer theft of customer's property); *Palmateer v. International Harvester Co.,* 85 Ill. 2d 124, 421 N.E.2d 876 (1981) (employee reported to police theft of screwdriver by co-employee); *Kalman v. Grand Union Co.,* 183 N.J. Super. 153, 443 A.2d 728 (1982) (pharmacist reported to State Board of Pharmacy employer's plan to violate state pharmacy rules); *Garibaldi v. Lucky Food Stores, Inc.,* 726 F.2d 1367 (9th Cir. 1984) (employee reported to California health officials shipment of adulterated milk); *Shaw v. Russell Trucking Line, Inc.,* 542 F. Supp. 776 (W.D. Pa. 1982) (employee notified police that employer's trucks were overloaded in violation of state law)." 242 Kan. at 900.

The court then held:

"Public policy requires that citizens in a democracy be protected from reprisals for performing their civil duty of reporting infractions of rules, regulations, or the law pertaining to public health, safety, and the general welfare. Thus, we have no hesitation in holding termination of an employee in retaliation for the good faith reporting of a serious infraction of such rules, regulations, or the law by a co-worker or an employer to either company management or law enforcement officials (whistle-blowing) is an actionable tort. To maintain such action, an employee has the burden of proving by clear and convincing evidence, under the facts of the case, a reasonably prudent person would have concluded the

employee's co-worker or employer was engaged in activities in violation of rules, regulations, or the law pertaining to public health, safety, and the general welfare; the employer had knowledge of the employee's reporting of such violation prior to discharge of the employee; and the employee was discharged in retaliation for making the report. However, the whistle-blowing must have been done out of a good faith concern over the wrongful activity reported rather than from a corrupt motive such as malice, spite, jealousy or personal gain." 242 Kan. at 900.

The majority in the present case relies upon the portion of the holding in *Palmer* which refers to "termination of an employee in retaliation for the *good faith reporting of a serious infraction of such rules, regulations, or the law by a co-worker or an employer to* either *company management* or law enforcement officials (whistle-blowing) *is an actionable tort."* (Emphasis added.) 242 Kan. at 900. This holding in *Palmer* which appears to permit an action based upon an employee's reporting of infractions to company management (internal whistle-blowing) clearly exceeds the scope of the factual scenario presented in *Palmer*. In *Palmer*, the employee reported the alleged fraudulent activity to "unspecified authorities." Clearly, from the factual background provided in the opinion, the report was made to outside authorities and not to her immediate employer or company management. The portion of the holding in *Palmer* which appears to recognize internal whistle-blowing as a basis for a wrongful discharge action exceeds the factual basis of the case and is mere dicta. Further, if the court intended to permit recovery for internal whistle-blowing to an immediate employer, it would not have required a showing by the employee that the employer had knowledge of the employee's reporting prior to the discharge in order to maintain an action for whistle-blowing. If internal whistle-blowing to an immediate employer was contemplated by the court, the employer would be the entity receiving the report of alleged violation of rules, regulations, or the law and would, therefore, have knowledge of the employee reporting the alleged violation.

Until and unless the Kansas Supreme Court specifically recognizes internal whistle-blowing as an exception to the employment-at-will doctrine, neither this court nor the district courts have any basis for permitting recovery of such a claim. *Zaniecki*

*v. P.A. Bergner & Co.,* 143 Ill. App. 3d 668, 493 N.E.2d 419 (1986), is an example of a case where a court refused to expand whistle-blower protection to an employee who contended he was discharged because of internal reporting. In *Zaniecki,* the employee reported alleged criminal activity to the store's chief security officer. The Illinois Court of Appeals looked for guidance from the Illinois Supreme Court decision in *Palmateer v. International Harvester Co.,* 85 Ill. 2d 124, 421 N.E.2d 876 (1981). In *Palmateer,* the plaintiff was discharged for informing the police of his suspicions that a fellow employee was involved in criminal activity on the job, and for agreeing to testify against him if it came to that. In *Zaniecki,* the court held this internal reporting was insufficient to support a whistle-blower claim. Whether our Supreme Court would expand whistle-blower protection to internal reporting or would follow the rationale of *Zaniecki* remains to be seen.